TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN




ON REMAND





NO. 03-05-00034-CV




Thomas O. Bennett, Jr. and James B. Bonham Corporation, Appellants

v.

Randy Reynolds, Appellee




FROM THE DISTRICT COURT OF SAN SABA COUNTY, 33rd JUDICIAL DISTRICT
NO. 8027, HONORABLE V. MURRAY JORDAN, JUDGE PRESIDING


 
M E M O R A N D U M O P I N I O N

                        In this proceeding following remand from the Texas Supreme Court, we reconsider
the amounts of exemplary damages that due process will permit on this record. The underlying
facts and procedural history are detailed in this Court’s prior opinion, 242 S.W.3d 866, and
that of the supreme court. 315 S.W.3d 867. A jury found appellants Thomas O. Bennett, Jr. and
James B. Bonham Corporation jointly and severally liable for conversion of cattle belonging
to Randy Reynolds and awarded Reynolds $5,327.11 in actual damages, plus exemplary damages
of $250,000 from Bennett and $1 million from Bonham Corporation. The district court rendered
judgment based on the jury’s findings. Bennett and Bonham Corporation each appealed to this
Court, challenging, among other things, whether the evidence was legally or factually sufficient to
support the actual damage awards or the malice findings that were the predicate for exemplary
damages, whether the size of the exemplary damages awards exceeded due-process limitations, and
whether Bonham Corporation could be held liable for actual or exemplary damages based on acts
by Bennett. 242 S.W.3d at 876. We affirmed the district court’s judgment in full. Id. at 876-907.
Bennett and Bonham Corporation then appealed to the Texas Supreme Court, challenging
the exemplary damages awards on the grounds that (1) there was legally insufficient evidence of
malice; (2) any acts by Bennett that were the basis for exemplary damages could not be imputed to
Bonham Corporation; and (3) the awards exceeded due-process limitations. The supreme court
affirmed this Court with respect to the predicate malice finding and Bonham Corporation’s liability
for exemplary damages, see 315 S.W.3d at 871-72, but held that the size of the awards exceeded
the outermost limits of due process. See id. at 873-83. The supreme court remanded the cause to
us with instructions to “reconsider exemplary damages in line with this opinion and prevailing
ratio analysis.” Id. at 885.
                        We have done so, and conclude that due process permits an exemplary damages
award against Bennett and Bonham Corporation of not more than $10,000 each.

THE SUPREME COURT’S OPINION AND PREVAILING RATIO ANALYSIS
                        Three factors guide courts in determining whether an exemplary damages award
exceeds the bounds of due process: (1) the degree of “reprehensibility” of the defendant’s conduct;
(2) the disparity or ratio between the actual or potential harm suffered by the plaintiff and the
exemplary damages award; and (3) the difference between the exemplary damages and the
civil penalties authorized or imposed in comparable cases. See State Farm Mut. Auto. Ins. Co.
v. Campbell, 538 U.S. 408, 418 (2003) (citing BMW of N. Am., Inc. v. Gore, 517 U.S. 559,
575 (1996)).

Reprehensibility
                        The first factor, the degree of reprehensibility of the defendant’s conduct, is the “most
important indicium of the reasonableness of a punitive damages award.” Gore, 517 U.S. at 575. The
U.S. Supreme Court has cautioned that “punitive damages should only be awarded if the defendant’s
culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition
of further sanctions to achieve punishment or deterrence.” State Farm, 538 U.S. at 419. Where
“a more modest punishment for this reprehensible conduct could have satisfied the State’s legitimate
objectives,” the Supreme Court has further indicated, courts should go no further. Id. at 419-20.                         Courts evaluate reprehensibility by considering five nonexclusive factors—whether: 
 
1.         “the harm caused was physical as opposed to economic;” 
 
2.         “the tortious conduct evinced an indifference to or a reckless
disregard of the health or safety of others;” 
 
3.         “the target of the conduct had financial vulnerability;” 
 
4.         “the conduct involved repeated actions or was an isolated
incident;” 
 
5.         “and the harm was the result of intentional malice, trickery, or
deceit, or mere accident.”
 
 
Id. at 419 (citing Gore, 517 U.S. at 576-77). In this case, the supreme court concluded that the
reprehensibility inquiry could consider not only Bennett’s conversion of the cattle—the underlying
tort—but certain other conduct by Bennett that “relate[d] back to the underlying theft and sought to
extend and exacerbate harm to Reynolds,” because it “may go to motive, underscore the parties’
animosity, shed light on provocation, demonstrate deliberateness and culpability, and otherwise
show heightened reprehensibility.” 315 S.W.3d at 874-75. The court identified the following
evidence of alleged extra-conversion acts that “may properly inform the reprehensibility analysis:”

            Bribing A Witness and Urging Him to Lie. Reynolds offered evidence that
when Bennett learned that former ranch hand Larry Grant had taken incriminating
photographs of the stolen cattle, Bennett urged Grant to lie about what he had seen.
Bennett then offered Grant a lucrative job and later some money under the guise of
helping Grant’s family after a car accident.
 
            Threatening a Witness. Reynolds points to testimony that a former
Corporation ranch hand attempted to threaten bodily harm to Grant. Allegedly, this
former employee tried to call and threaten Grant, but instead reached Grant’s
brother-in-law, thinking that person was Grant.
 
            . . . it seems sensible that harm inflicted or threatened on third parties can
be part of the reprehensibility equation when such harm actually targets the plaintiff
and the instant litigation. Here, though, the alleged threat went off course, and the
record does not show it was ever communicated to Grant; in reality no one was
actually endangered. Nonetheless, while this misdirected threat threatened nobody,
it attempted to cover Bennett’s tracks and foil efforts—not just by Reynolds but by
the legal system itself—to unearth the truth.
 
            Photograph Tampering. The evidence at both the civil and criminal trials
included some of the photographs taken by ranch hand Grant, who suspected that the
trailered cattle were not Bennett’s. Reynolds alleges that Bennett doctored some of
Grant’s photographs to bolster his criminal defense and offered perjured testimony
in that trial. Moreover, Reynolds asserted in the civil suit that the photographs had
been altered to conceal evidence of Bennett’s conversion.
 
            Litigation Against Grant. Bennett filed a $50,000 slander suit against ranch
hand Grant. Reynolds says these “intimidation techniques” showed “that Bennett
intended to inflict as much financial pain on Grant as possible.” Here, too, the jury
could reasonably have deemed this slander suit, though filed against Grant, part of
a pattern of intentional malice, trickery, and deceit to cover up Bennett’s wrongdoing
and subvert Reynolds’s lawsuit.
 
            Meddling With Reynolds’s Brand. The County and District Clerk of
San Saba County testified that Bennett once attempted to register Reynolds’s brand
as his own. This cover-up evidence shows “deliberateness and culpability” and
can enhance exemplary damages given its “nexus to the specific harm suffered by
the plaintiff.” We have previously held that certain cover-up efforts can show
reprehensibility, as when a manufacturer of asbestos-containing products continues
selling what it knows is dangerous.
 
 
Id. at 875-77 (footnotes omitted).
                        On the other hand, the supreme court concluded that “[a]t heart . . . this is an
economic-injury, actual-harm case seeking recovery for the conversion of thirteen head of
cattle . . . .” Id. at 877. It rejected Reynolds’s view of “a broader ‘criminal escapade’ that aimed to
ruin him,” stating that “the theoretical possibilities of greater harm strike us as marginally relevant
at best in assessing exemplary damages, absent proof of the likelihood of such harms.” Id. The
court further reasoned that “Bennett’s tort was not part of a wider plan to steal Reynolds’s entire
herd or to bankrupt him. Nor is there evidence that Bennett was a recidivist cattle thief rather than
a first-time offender.” Id. Instead, according to the supreme court, “[t]his lawsuit has a narrower
focus, and the jury’s findings focus on conversion.” Id.
                        The supreme court concluded that “Reynolds’s evidence of a malicious cattle theft
and various furtive acts to conceal it satisfies one of the five State Farm reprehensibility factors: the
harm resulted from intentional malice, trickery, or deceit,” but that “the other factors are essentially
absent.” Id.

Ratio between exemplary and compensatory damages
                        The second factor in our due-process analysis considers the disparity between
the actual or potential harm suffered by the plaintiff and the exemplary damages award. Although
the high courts have not imposed a rigid, bright-line ratio that is to be universally applied,
the U.S. Supreme Court nonetheless has stated that “in practice, few awards exceeding a single-digit
ratio between punitive damages and compensatory damages, to a significant degree, will satisfy
due process.” State Farm, 538 U.S. at 425 (deriving a 4:1 ratio from longstanding Anglo-American
tradition of imposing “double, treble, or quadruple damages to deter and punish”). The
Texas Supreme Court has similarly observed that “any ratio above 4:1 ‘might be close to the line
of constitutional impropriety.’” 315 S.W.3d at 878 (quoting Tony Gullo Motors I, L.P. v. Chapa,
212 S.W.3d 299, 308 (Tex. 2006) (quoting State Farm, 538 U.S. at 425)). An award above the 4:1
ratio typically will comport with due process only where a “particularly egregious act has resulted
in only a small amount of economic damages.” Gore, 517 U.S. at 582. Drawing on its analysis of
the reprehensibility factor, the Texas Supreme Court held that the facts in this case do not fall within
the “particularly egregious” exception so as to warrant an upward departure from the typical 4:1
ratio. 315 S.W.3d at 879-80. To the contrary, in the supreme court’s view, the facts of this case “are
not meaningfully distinguishable from those in Gullo Motors.” Id. at 878.
                        In Gullo Motors, Nury Chapa claimed that Gullo Motors, a car dealership, had
committed fraud by promising to deliver a “Limited” model of Toyota and delivering instead a
base model. Gullo Motors, 212 S.W.3d at 303. There was evidence of deceitful conduct by the
dealership, including adding the VIN of the base model to the sales contract after Chapa had already
signed it and forging signatures, id. at 305-06, including the signature of Chapa’s deceased husband
on a delivery form showing acceptance of the vehicle, id. at 317 (O’Neill, J., dissenting). When
Chapa sought to return the unwanted vehicle for a refund, the dealership refused, stating falsely that
the car had already been titled. Id. at 306. Additionally, there was evidence that the sales manager
had made abusive comments to Chapa, including telling her that “[y]ou are a nobody. It’s your
word against me, against us,” and that he would have the car towed away at her expense. Id. at 317
(O’Neill, J., dissenting). Chapa sued Gullo Motors, and a jury awarded her $7,213 in economic
damages, $21,639 in mental-anguish damages (corresponding to three times economic damages),
plus exemplary damages of $250,000, which the court of appeals reduced to $125,000. Id. at 306-07.
The $125,000 exemplary damages award was roughly 4.33 times the amount of actual damages. The
Texas Supreme Court held that this award violated due process. Id. at 310. It reasoned that the
dealership’s conduct implicated only one of the five reprehensibility factors—“intentional malice,
trickery, or deceit, [not] mere accident” and that:

Pushing exemplary damages to the absolute constitutional limit in a case like this
leaves no room for greater punishment in cases involving death, grievous physical
injury, financial ruin, or actions that endanger a large segment of the public. On this
record, Gullo Motors’ conduct merited exemplary damages, but the amount assessed
by the court of appeals exceeds constitutional limits.
 
 
Id.
                        The Texas Supreme Court concluded that Bennett and Bonham Corporation’s conduct
was not “qualitatively or quantitatively more egregious” than that of Gullo Motors. 315 S.W.3d
at 879. Like Gullo Motors, Bennett and Bonham Corporation had intentionally inflicted economic
damage on the plaintiff, but, the court reasoned, their conduct implicated only one of the five
reprehensibility factors: it was the result of intentional malice, trickery, or deceit. In light of the
perceived similarities between Gullo Motors and this case, the Texas Supreme Court held that the
exemplary damages awards here, which significantly exceeded a 4.33 ratio, likewise violated
due process. Id. at 878, 880. 
Legislative penalties for similar misconduct
                        The third factor in our due-process analysis considers the difference between the
exemplary-damages award and the civil penalties legislatively authorized or imposed in comparable
cases. State Farm, 538 U.S. at 418. Although it observed that “we need not discuss the ‘comparable
sanctions’ guidepost at all, as unconstitutional excessiveness is aptly demonstrated under the
ratio guidepost,” the Texas Supreme Court nonetheless took pains to add some observations
regarding the use of civil or criminal penalties as a guidepost for evaluating the constitutional
permissibility of exemplary damages awards. The court emphasized that because “legislatures make
policy and are well positioned to define and deter undesired behavior, . . . . reviewing courts ‘should
accord substantial deference to legislative judgments concerning appropriate sanctions for the
conduct at issue.’” 315 S.W.3d at 880-81 (quoting Gore, 517 U.S. at 583). Thus, “[i]n cases where
applicable civil penalties exist, this guidepost gives bad actors fair notice of what is forbidden and
of potential penalties.” Id. at 881. However, the supreme court ultimately concluded this guidepost
offered “little guidance” because there were no comparable civil penalties. Id. at 881, 882.



                        The supreme court did emphasize, however, that the legislature had imposed criminal
penalties for cattle theft and that, in fact, the jury had made a cap-buster finding that Bennett and
Bonham Corporation had committed theft of ten or more head of cattle having an aggregate value
of less than $100,000, an act that constituted third-degree felony theft. Id. at 881-82. Although
maintaining that the potential criminal penalty of incarceration “does not translate meaningfully to
a dollar-figure fine,” the court did intimate that the criminal fine for such conduct—$10,000—might
provide a potential objective basis for setting a constitutionally permissible exemplary damages
award. Id. at 882 (“pegging punitives to the $10,000 criminal fine would produce a 1.877 ratio”).

CONCLUSION
                        On remand, we are left with the task of determining “a more modest punishment” in
exemplary damages that would give effect to this State’s legitimate interest in deterring and
punishing Bennett and Bonham Corporation’s reprehensible conduct without being gratuitously
excessive and amounting to an arbitrary deprivation of property. See id. at 880 (quoting State Farm,
538 U.S. at 419-20). The Texas Supreme Court has further indicated that these amounts must be
sufficiently beneath the typical 4:1 ratio so as to “leave[] . . . room for greater punishment in cases
involving death, grievous physical injury, financial ruin, or actions that endanger a large segment of
the public.” Id. at 878 (quoting Gullo Motors, 212 S.W.3d at 310). As for what the precise amounts
might be, this Court should not remedy the arbitrariness of excessive exemplary damage awards
merely by arbitrarily picking its own numbers out of the air. Objective criteria are essential in
evaluating the reasonableness of exemplary damages, see TXO Prod. Corp. v. Alliance Res. Corp.,
509 U.S. 443, 480-81 (1993) (“Without objective criteria on which to rely, almost any decision
regarding proportionality will be a matter of personal preference.”) (O’Connor, J., dissenting), and
among these are the policy judgments reflected in the financial penalties the legislature has imposed
for cattle theft. Although these penalties may not be instructive in every case where exemplary
damages have been imposed for conduct constituting theft, see 315 S.W.3d at 881 n.82, we think
they can provide guidance regarding appropriate sanctions for Bennett and Bonham Corporation’s
conduct here. See id. at 881. Deferring to these legislative judgments, we hold that due process
permits exemplary damages awards against Bennett and Bonham Corporation of not greater than
$10,000 each. 
                        Accordingly, we affirm the district court’s judgment conditioned on the remittitur by
Reynolds of $240,000 as to Bennett (reducing the exemplary damages award against him from
$250,000 to $10,000), and $990,000 as to Bonham Corporation (reducing the exemplary damages
award against it from $1 million to $10,000). See Tex. R. App. P. 46.3. If Reynolds files these
remittiturs with the clerk of the district court within thirty days of this opinion and judgment and
notifies this Court of such, we will reform the district court’s judgment and, as reformed, affirm.
Otherwise, we will reverse the district court’s judgment and remand the cause for a new trial. 
 
 
                                                                        __________________________________________Bob Pemberton, Justice
Before Justices Patterson, Pemberton and Henson
Affirmed Conditioned on Remittitur
Filed: November 18, 2010